IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH J. CABRAL,
      Petitioner,

vs.                                    Case No.:  3:10cv239/WS/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 17, 21).  Petitioner filed a reply (doc. 26).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 21).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2003-CF-330, with one count of aggravated battery with great bodily harm and with a deadly weapon (Ex. B at 1).  Following a jury trial on December 3, 2003, Petitioner was found guilty as charged (Ex. B at 30–31; Ex. C). The same day, Petitioner was adjudicated guilty

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

and sentenced as a violent career criminal to life imprisonment without the possibility of parole and with pre-sentence credit of 317 days (Ex. B at 74–79).  Petitioner was granted a belated appeal (Ex. E) and appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D04-5208 (Ex. F).  On May 15, 2006, the First DCA reversed Petitioner's life sentence and remanded for resentencing of the offense as a second degree felony but noted that its decision did not affect Petitioner's sentencing as a violent career criminal (Ex. I).  Cabral v. State, 944 So. 2d 1026 (Fla. 1st DCA 2006).  On May 9, 2007, Petitioner was resentenced as a violent career criminal to forty (40) years of imprisonment with a mandatory minimum term of thirty (30) years and with pre-sentence credit of 317 days (Ex. J at 48–61, 66–72).  Petitioner filed a notice of appeal, and prior to the filing of his initial brief, he filed a counseled motion to correct sentencing error, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. K at 80–87).  The state circuit court granted the motion to the extent Petitioner challenged certain fees imposed, and denied the motion to the extent Petitioner challenged his violent career criminal designation (id. at 144–46).  In his initial brief, Case No. 1D07-2984, he challenged only the violent career criminal designation (Ex. M).  The First DCA affirmed per curiam without written opinion on July 31, 2008, with the mandate issuing August 18, 2008 (Ex. O).  Cabral v. State, 986 So. 2d 604 (Fla. 1st DCA 2008) (Table).

On October 30, 2008, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D08-5376, alleging ineffective assistance of appellate counsel (Ex. P).  The First DCA denied the petition on the merits on April 3, 2009, and denied Petitioner's motion for rehearing on May 14, 2009 (Exs. R, S).  Cabral v. State, 6 So. 3d 1270 (Fla. 1st DCA 2009).

On May 1, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. T at 1–28).  The state circuit court summarily denied the motion on September 24, 2009 (id. at 120–30).  Petitioner appealed the decision to the First DCA, Case No. 1D09-5524 (id. at 242).  The First DCA affirmed the decision per curiam without written opinion on May 3, 2010, with the mandate issuing June 1, 2010 (Exs. V, W).  Cabral v. State, 36 So. 3d 87 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on June 30, 2010 (doc. 1).  Respondent concedes the petition is timely (doc. 17 at 24).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786)  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").   The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
       (A)  the applicant has exhausted the remedies available in the courts of the State; or
       (B) (i)  there is an absence of available State corrective process; or
          (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding

such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This

language, while not part of the Court's holding, provides helpful instruction.  With regard to this

language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for
> petitioners seeking to establish exhaustion.  However, we agree with the district court
> that this language must be "applied with common sense and in light of the purpose
> underlying the exhaustion requirement[:] 'to afford the state courts a meaningful
> opportunity to consider allegations of legal error without interference from the
> federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting
> Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).
> This is consistent with settled law established by the Supreme Court. . . .  We
> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation"

requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For

example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his

juror misconduct claims to the state courts where his brief to the state appellate court did not refer

to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited

in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).

The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt

with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . .

.," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the

Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in

petitioner's state appellate brief were state supreme court cases that made no mention of the United

States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation
containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by
the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and
Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v.
Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient
to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the
federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.   Ground One:  "Petitioner could not be reclassified because the use of a weapon was an essential element."

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner contends the trial court erred at his initial sentencing by adjudicating him guilty of a first degree felony and sentencing him for such based upon his use of a weapon during commission of the offense, pursuant to Florida Statutes § 775.087(1), because use of a weapon was an essential element of the offense (doc. 1 at 4).[7]  He states he raised this claim in his Rule 3.800(b)(2) motion (id.).

Respondent contends this claim is not cognizable in federal habeas, because it presents purely an issue of state law (doc. 17 at 5).  Respondent additionally contends to the extent Petitioner's claim is construed as raising a federal claim, it was not exhausted by proper presentation to the state courts (id. at 8).  Respondent argues any attempt to return to state court to exhaust the claim would be futile, because the claim could have and should have been raised on direct appeal or in Petitioner's first post-conviction motion; therefore, it would be deemed procedurally defaulted if he raised it in any additional post-conviction application (id. at 9).  Therefore, the claim is procedurally barred from federal review (id.).  Notwithstanding the procedural bar, Respondent claims Petitioner is not entitled to relief, because the state court granted relief on this claim at resentencing by reclassifying his offense as a second degree felony and sentencing him accordingly (id. at 13).

In Petitioner's reply, he argues a claim completely different from the claim raised in his petition.  He appears to argue the felony reclassification based upon his use of a weapon violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), because the jury did not make a finding that he used a weapon during commission of the aggravated battery, and such error is structural (doc. 26 at 1–3).  In support of his argument he cites Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (id.).

First, addressing the claim Petitioner raised in his petition, as opposed to his reply, Respondent's arguments are well supported by the record.  The claim presented as Ground One is purely an issue of the trial court's application of Florida's sentencing laws.  Federal habeas relief

---

[7] Aggravated battery is a second degree felony, but the use of a weapon during commission of the crime raises the crime to a first degree felony, unless use of a weapon is an essential element of the crime. See Fla. Stat. §§ 784.045, 775.087(1)(b).

is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L. Ed. 2d 385 (1991) (errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Barclay v. Florida, 463 U.S. 939, 958–59, 103 S. Ct. 3418, 3429, 77 L. Ed. 2d 1134 (1983) ("Mere errors of state law are not the concern of this court . . . unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir. 1983).  Questions of state law and procedure "rarely raise issues of federal constitutional significance.  [A] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991) (quoting Carrizales, supra).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988).  State law issues may be reviewed in this federal forum only when the alleged errors were "so critical or important to the outcome of the trial to render the entire trial fundamentally unfair."  Tejada, 941 F.2d at 1560.  The Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly."  Estelle, 502 U.S. at 352.

Here, Petitioner's claim that the sentencing court erred at his initial sentencing by classifying his conviction as a first degree felony instead of a second degree involves purely a state law issue.  The claim does not have a true federal constitutional dimension.  This would be true even if Petitioner couched his claim in terms of a federal constitutional violation, which he did not.  Therefore, his claim is not cognizable in federal habeas.

Additionally, Petitioner did not exhaust a federal claim in the state courts.  Although Petitioner raised this issue on direct appeal of his conviction, he argued the issue as purely one of

state law, not federal (Ex. F).[8]  Therefore, to the extent he attempts to raise a federal claim here, he failed to fairly present a federal claim to the state courts.  Moreover, the state courts granted relief on the claim—the First DCA held that the initial reclassification of Petitioner's offense from a second degree felony to a first degree felony was erroneous under state law and reversed Petitioner's sentence and remanded for resentencing of the offense as a second degree felony (Ex. I).  Petitioner was then resentenced for a second degree felony (Ex. J at 6–72).  Because the state courts granted Petitioner the relief to which he was entitled, he is not entitled to relief in this court.

Liberally construing Petitioner's reply as properly raising a federal claim of Apprendi/Blakely error, that is, that the initial reclassification was based upon a fact not found by the jury, Petitioner still is not entitled to relief.  As discussed *supra*, the reclassification was corrected upon resentencing.[9]  Regardless, no Apprendi/Blakely error occurred, because the fact upon which the felony reclassification was based, that is, use of a weapon during the commission of the felony, was a fact specifically found by the jury in its verdict (Ex. A at 30).  Therefore, Petitioner is not entitled to relief on Ground One, including the additional argument he raised in his reply.

B.    Ground Two:  "Counsel failed to investigate, prepare and present a viable actual innocence defense."
      Ground Three:  "Counsel failed to call and present at trial the available expert and lay witness testimony."[10]

In Ground Two, Petitioner asserts his trial counsel was required to investigate, prepare, and present an insanity defense, based upon obvious "red flags" of terminology used in Dr. Larson's psychological evaluation, which would have put a reasonably competent attorney on notice of the existence of a viable insanity defense (doc. 1 at 4).  In Ground Three, Petitioner contends counsel

---

[8] Petitioner asserts he raised Ground One in his Rule 3.800(b)(2) motion; however, in that motion he challenged only his designation as a violent career criminal and certain fees, and on appeal, he challenged only the violent career criminal designation (Ex. K at 80–88, Ex. M).

[9] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  In Blakely, the Court clarified that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict."  542 U.S. at 303.

[10] The undersigned has consolidated Grounds Two and Three for organizational purposes.

was ineffective for failing to call Dr. Larson and Ms. Gideon (the victim) as witnesses (*id.* at 5).  He contends their testimony would have resulted in a verdict of not guilty by reason of insanity (*id.*).  Petitioner states he raised both of these claims in his Rule 3.850 motion (*id.*).

Respondent concedes Petitioner raised these claims in his Rule 3.850 motion (doc. 17 at 17).  Respondent contends Petitioner failed to show that the state court's adjudication of the claims was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 18–20).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is

deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[11]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised these claims as Grounds One and Two in his Rule 3.850 motion (Ex. T at 5–23).  The state circuit court denied the claims on the following grounds:

> In Defendant's first claim, Defendant asserts that his counsel was ineffective for failing to investigate and pursue an insanity defense at trial.  Defendant asserts that the evaluation done by Dr. James Larson was sufficient "to put a reasonably competent attorney on notice as to the compelling need for further investigation of his client's sanity."  Specifically, Defendant points to the following information which he argues should have put counsel on notice of the need to pursue an insanity defense:  1) Dr. Larson's notation within his reports that the infirmary records revealed a bipolar diagnosis, a "need of mental health treatment," and a history of alcohol abuse; 2) a comment by a law enforcement officer at trial that, at the time of his recorded statement, Defendant was "visibly upset" and "may have been drinking a little bit;" and 3) statements by the victim in her deposition in which she characterized Defendant as a "pillhead."
>
> Defendant does not assert that he was in fact insane at the time of the offense, but states that he "personally advised his Attorney of all the foregoing," and that counsel "failed to investigate the Defendant's mental health and long, continued use of multiple drugs and narcotics which would have afforded his Client a viable insanity defense."  Defendant argues that "Theresa Gideon's deposition testimony as well as Dr. Larson's psychological evaluation afforded Counsel a factual, evidentiary basis upon which to prepare and present the . . . insanity defense . . . resulting in the Defendant being found not guilty by reason of insanity or convicted of a lesser included offense."  Defendant also argues that counsel was deficient for failing to obtain his complete past and present mental health records, and to have him

examined by other forensic mental health experts.  Had counsel investigated further, Defendant asserts that the results of his trial would have been different.

"The law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce 'a fixed and settled frenzy or insanity either permanent or intermittent.'"  Cirack v. State, 201 So. 2d 706, 709 (Fla. 1967), superseded by statute on other grounds as stated in Linn v. Fossum, 946 So. 2d 1032, 1037 (Fla. 2006).  However, for offenses committed after October 1, 1999, "voluntary intoxication" is not a permitted defense, nor is evidence of such admissible to show a defendant was insane at the time of his or her crime.

> Voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law. Evidence of a defendant's voluntary intoxication is not admissible to show that the defendant lacked the specific intent to commit an offense and is not admissible to show that the defendant was insane at the time of the offense, except when the consumption, injection, or use of a controlled substance under chapter 893 was pursuant to a lawful prescription issued to the defendant by a practitioner as defined in s. 893.02.

Fla. Stat. § 775.051 (2002).

Defendant has failed to allege or demonstrate any facts suggesting an insanity defense was viable or that his counsel was deficient for failing to pursue such a defense.  Evidence of his consumption of alcohol would likely have been relevant only to a defense of voluntary intoxication which, as noted above, is not a permitted defense.  Although Defendant vehemently asserts that Dr. Larson's evaluation demonstrated the need to investigate and pursue an insanity defense, Defendant ignores the fact that, at the request of his counsel, Dr. Larson did in fact evaluate him for sanity at the time of the offense.  Dr. Larson was clearly aware of Defendant's alcohol abuse, his psychiatric history, and that Defendant was "off his medication" at the time of the offense.  Knowing these things, Dr. Larson specifically concluded that "Defendant had the capacity to understand what he was doing, the consequences, as well as the wrongfulness of his conduct during the time frame of the alleged offense.  Consequently, in my opinion he **would not meet** the criteria for insanity at the time of the alleged offenses" (emphasis added).[FN 4: See Attachment 2, Dr. Larson's report.]

Outside of the scant evidence which Defendant suggests is already in the record, Defendant makes no showing of any facts which would suggest that

Defendant was in fact in a state of insanity at the time of his crime. He does not allege that he had taken any legitimately prescribed drugs prior to the incident,[FN 5: Indeed Dr. Larson noted that Defendant was "off" his prescribed medications at the time of the incident] or that he made counsel aware of any additional facts relevant to an insanity defense. "[W]here counsel has reason to believe pursuing certain lines of defense would be fruitless or even harmful, counsel does not act unreasonably in not pursuing them." Reed v. State, 875 So. 2d 415, 432 (Fla. 2004), citing Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct .2052, 80 L. Ed. 2d 674 (1984). Defendant has failed to demonstrate that his counsel, having had Defendant evaluated as to his sanity and receiving an unfavorable result, was deficient for failing to investigate further, and has further failed to demonstrate that had counsel more vigorously pursued an insanity defense, evidence was available which would have shown Defendant was "unable to understand the nature and quality of his act or its consequences, or was incapable fo distinguishing right from wrong at the time of the incident." Thus, Defendant has failed to show a reasonable probability that a different result would have been had at his trial, were it not for counsel's alleged deficiency.[FN 6: Defendant also represented to the Court that he had no complaints about his counsel and his services at the conclusion of the trial. See Attachment 3, trial transcript excerpts, pages 154–155.] He is not entitled to relief on this basis.

Defendant's second claim is closely related to his first claim. In his second claim, Defendant asserts that defense counsel should have both called Dr. Larson and more thoroughly questioned the victim, Theresa Gideon, in support of an insanity defense. Defendant asserts that Dr. Larson would have testified to Defendant's "mental disorder." However, Defendant fails to demonstrate that testimony from Dr. Larson as to Defendant's "mental disorder" would support an insanity defense, or that it would have likely produced a different result at his trial. If Dr. Larson had been called to the stand, he would most likely have testified to his conclusion that Defendant **was not insane** at the time of the offense. The Court cannot conclude that counsel's performance was deficient in this regard, nor does it find that Defendant was prejudiced.

With regard to Theresa Gideon's testimony, Defendant asserts that his counsel should have obtained "trial testimony consistent with her deposition testimony which would have afforded the Defendant a viable actual innocence defense by a not guilty by reason of insanity verdict." At deposition, Ms. Gideon testified that Defendant frequently took large amounts of pills and that such consumption would make him "like he drank too much."[FN 7: See Attachment 4, deposition, page 14.] Defendant asserts that his failure deprived him of an insanity defense.

Ms. Gideon's testimony as to Defendant's past history of drug use was irrelevant as to Defendant's state of mind at the time of the commission of the instant offense.  Ms. Gideon testified that Defendant had been drinking prior to the offense, and that she did not know whether he had consumed any pills in the hours leading up to the crime.[FN 8:  See Attachment 4, deposition, page 14]  Ms. Gideon also opined during her deposition that Defendant was a "recreational" drug user,[FN 9:  See Attachment 4, deposition, page 12.] and that "his whole thing with the psychiatrist and everything is all playing off the system, you know what I mean, feeding off the system, that he did very well."[FN 10:  See Attachment 4, deposition, pages 11–12.]  Ms. Gideon also stated that Defendant often sold his prescribed medications (Lortab and Valium) and that he took them "every once in a while."[FN 11:  See Attachment 4, deposition, pages 9–10.]  Without more, such testimony would only tend to support a defense of voluntary intoxication,[FN 12:  Defendant also admitted in his statement to police that he was "too fucking drunk" to leave.  See Attachment 3, trial transcript excerpts, page 94.] which is not a legal defense.  Indeed, to introduce such evidence, without a valid legal defense to which such evidence would be applicable, would have, in all likelihood, only served to prejudice Defendant.  Defendant has failed to demonstrate that his counsel was deficient, or that a more in-depth cross-examination of Ms. Gideon would have rendered a different result at his trial.

Lastly, Defendant asserts that his comment made during interrogation to Investigator Fillingim about his dog showed that Defendant, "because of a diagnosed 'organic mental disorder,' was 'unable to understand the nature and quality of his act, or its consequences'."  Defendant refers to the following exchange between him and the investigator:

> Fillingim:  That's your old address?
> Defendant:  Yeah, my new address is 601 Wayne Avenue.
> Fillingim:  601 Wayne Avenue?
> Defendant:  Yes.
> Fillingim:  Okay.
> Defendant:  The fact is I have a dog over there.  He's probably going to starve to death.
> Fillingim:  No, we'll see about that.[FN 13:  See Attachment 3, trial transcript excerpts, pages 91–92]

Defendant characterizes this statement as "spontaneous" and "unusual" and asserts that it should have been a "red flag" for cross examination of the officer as to Defendant's demeanor.

Defendant has failed to demonstrate that his demeanor was particularly relevant to the evidence at hand.  The Court finds Defendant's statement to be neither unusual nor out of context, but rather demonstrates that Defendant, when questioned about where he lived, was coherent and logical enough to recall that he had a pet at that address depending upon him for care.  Furthermore, his being "visibly upset" is also not unusual for someone under police interrogation for a serious stabbing, and not particularly probative of an insanity defense.  Lastly, in his statement to the police, made shortly after the incident, Defendant clearly understood that he had done something wrong, saying, "I know I'm screwing myself right now what I'm saying but I don't care.  What I did I'm going to pay for it, I deserve it, but man."[FN 14:  See Attachment 3, trial transcript excerpts, pages 94–95].  Later, he said, "I just blacked out.  I just, like I said I did it, I ain't going to lie to you, I did it.  I deserve whatever I get,"[FN 15:  See Attachment 3, trial transcript excerpts, page 96.] and "I'm going to prison for the rest of my life for this."[FN 16:  See Attachment 3, trial transcript, page 93.]  Defendant is not entitled to relief on the basis of his second claim.

(Ex. T at 122–27).  The First DCA affirmed without a written decision (Ex. V).

The state circuit court correctly identified the two-pronged Strickland standard as the legal standard applicable to Petitioner's claims (Ex. T at 121–22).  Additionally, Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence, and those findings are supported by the state court record.  Therefore, the state court's findings are presumed correct, including the court's findings as to content of Dr. Larson's report, the content of Ms. Gideon's testimony during her deposition and at trial, and Petitioner's statements to police (see Ex. T at 139–87).  Petitioner thus is entitled to federal habeas relief only if he demonstrates that the state court's adjudication of the claim was an unreasonable application of Strickland.

The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in

concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Determinations of the elements of a certain defense, the availability of a certain defense, and the admissibility of certain evidence are solely within the province of the Florida courts.  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales, 699 F.2d at 1055.  Therefore, this federal court must abide by the state court's determination that although Florida law recognizes a defense of insanity "super-induced by the long and continued use of intoxicants so as to produce 'a fixed and settled frenzy or insanity either permanent or intermittent,'" voluntary intoxication was not an authorized defense at the time Petitioner committed the crime in the instant case (January 20, 2003).  This court must also defer to the state court's determination that evidence of Petitioner's voluntary alcohol intoxication at the time of the offense was not admissible to show he was insane at the time of the crime.

As the state court noted, defense counsel had Petitioner evaluated by Dr. Larson with regard to Petitioner's sanity at the time of the offense, and Dr. Larson concluded:

> In spite of the Defendant's impairments, I concluded the Defendant had the capacity to understand what he was doing, the consequences, as well as the wrongfulness of his conduct during the time frame of the alleged offense.  Consequently, in my opinion, he would not meet the criteria for insanity at the time of the alleged offense.

(Ex. T at 144).   Further, the evidence proffered by Petitioner, considered individually and collectively, including Dr. Larson's report, Ms. Gideon's testimony, and Petitioner's statements to police, does not suggest Petitioner was suffering from a "fixed and settled frenzy or insanity" at the time of the offense; indeed, Dr. Larson's report states the opposite.  At most, this evidence suggested Petitioner was voluntarily intoxicated at the time of the offense.  However, as the state court determined, voluntary intoxication was not a recognized defense; therefore, such evidence would have been inadmissible for that purpose.  In light of the foregoing, the First DCA's rejection of

Petitioner's claim could have been supported by the reasonable theory that counsel did not perform deficiently, because further pursuit of an insanity defense would have been fruitless.

Petitioner failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Grounds Two and Three.

C. Ground Four:  "Counsel failed to raise 'the sole issue' as to the Petitioner's sentencing as a violent career criminal."

Petitioner contends his prior convictions from the State of Massachusetts were entered during the same sentencing proceeding on April 25, 1986, and therefore, could not provide a basis for his sentencing as a violent career criminal (or "VCC") (doc. 1 at 5).  He states he raised this claim in his Rule 3.850 motion and on appeal following his resentencing (*id.*).

Respondent concedes Petitioner raised this claim in his Rule 3.850 motion (doc. 17 at 17). Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 21–24).

1. Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Three in his Rule 3.850 motion (Ex. T at 23–26).  The state circuit court denied the claim on the following grounds:

> With regard to Defendant's final claim, Defendant alleges that he does not meet the criteria for VCC sentencing, and that defense counsel was ineffective for failing to raise this issue in the trial court.  This claim is without merit.
>
> To be designated a "violent career criminal," a defendant must 1) have been previously convicted as an adult three or more times for certain enumerated offenses or for "any forcible felony" as defined in section 776.08, Florida Statutes; and 2) have been incarcerated in a state or federal prison.  In addition, the primary offense for which the defendant is to be sentenced also must be a felony which is one of the enumerated offenses or "any forcible felony," must have been committed on or after October 1, 1995, and also must have been committed within five years after the conviction of the last prior enumerated felony.  The Defendant must also not have received a pardon for any of the qualifying offenses and none of the qualifying

convictions may have been set aside in postconviction proceedings.[FN 17: Although there are alternative ways to be designated a VCC, these are the qualifications relevant to the instant case.] Fla. Stat. § 775.084(1)(d) (2002).

The instant crime was committed in January 2003, and is a forcible felony as defined in section 776.08, Florida Statutes.[FN 18: See Attachment 5, Information.] The documents submitted at Defendant's original sentencing show that Defendant was convicted of arson in Florida in February 1998 for which a sentence of time served was imposed.[FN 19: See Attachment 6.]  Arson is also categorized as a forcible felony under section 776.08, Florida Statutes.  Therefore, the instant crime was committed within 5 years after the conviction for the last qualifying felony.  The records further demonstrate that Defendant was convicted of armed robbery in Massachusetts on April 25, 1986, and again convicted of armed robbery on June 28, 1993 for which he served time in state prison.[FN 20: Defendant does not deny that the convictions in the record are his convictions.  Robbery is also a forcible felony pursuant to section 776.08.]  It is not necessary, as Defendant seems to assert, that all three priors take place within the five years preceding the offense before the Court for sentencing.  Further, nothing in the record suggests, and Defendant does not argue, that any of these convictions were set aside or that he received a pardon for any of these offenses.  Defendant has failed to demonstrate that he was not qualified as a VCC, and therefore has failed to show that counsel was deficient in his performance or that he was prejudiced.  He is not entitled to relief on this basis.[FN 21:  Further, it appears that the issue of Defendant's qualification for VCC sentencing has been considered twice on appeal.  See Attachment 7.]

(Ex. T at 127–29).  The First DCA affirmed without a written decision.

Petitioner failed to rebut the state court's factual findings with clear and convincing evidence; further, the findings are supported by the record (see Ex. Q at 196–215).  Therefore, the court defers to the state court's findings that (1) the instant crime was committed January of 2003; (2) Petitioner was convicted of arson in Florida in February of 1998; (3) Petitioner was convicted of one armed robbery in Massachusetts on April 25, 1986, and another armed robbery on June 28, 1993, and (4) Petitioner served time in state prison for the 1993 robbery.  Furthermore, this federal court must abide by the state court's determination regarding the statutory qualifications for VCC sentencing, and the court's determination that Petitioner's prior convictions satisfied the statutory qualifications for VCC sentencing.  See Bradshaw, 546 U.S. at 76; Mullaney, 421 U.S. at 691; Carrizales; 699 F.2d at 1055.

In light of the state court's findings and its application of state law to those findings, Petitioner failed to show that counsel had a meritorious basis for objecting to Petitioner's VCC sentencing on the ground that he did not have sufficient qualifying prior convictions.  In the absence of a meritorious basis for objection, Petitioner failed to show deficient performance by counsel or that he was prejudiced by counsel's alleged error.  Therefore, the state court's denial of his ineffective assistance of counsel claim was reasonable under Strickland.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 31st day of May 2012.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).